UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                       :
MARY MIDDLETON,                        :           15mc0023
                                       :
                  Plaintiff,           :
                                       :        OPINION AND ORDER
            -v-                        :
                                       :
GREEN CYCLE HOUSING, INC., GREEN CYCLE :
HOUSING, LLC; and TAL ETSHTIEN,        :
Individually,                          :
                  Defendants.          :
                                       :
---------------------------------------X
                                       :
MARY MIDDLETON,                        :
                                       :
                  Petitioner,          :
                                       :
            -v-                        :
                                       :
ACI 1490 LLC, 45 UPLAND DRIVE RE LLC;  :
and VITRUVIAN MINERALS LLC,            :
                                       :
            Respondents/Garnishees.    :
                                       :
---------------------------------------X


APPEARANCES:

For the Plaintiff and Petitioner:
James W. Perkins
Lauren C. Harrison
Ashley A. LeBlanc
Greenberg Traurig, LLP
The MetLife Building
200 Park Avenue
New York, New York 10166

1

For the Defendants Tal Etshtien and Green Cycle Housing, LLC,
and Respondents ACI 1490 LLC and 45 Upland Drive RE LLC
Andrew P. Saulitis
Law Offices of Andrew P. Saulitis P.C.
40 Wall Street - 37th Floor
New York, New York 10005

DENISE COTE, District Judge:

A September 9, 2016 Order and Judgment granted plaintiff
Mary Middleton's ("Middleton's") application for the right to an
award of attorneys' fees and expenses pursuant to N.Y. Civ.
Prac. L. & R. ("N.Y. C.P.L.R.") § 5251, "with the amount and
reasonableness of the fees to be determined by the Court and
included in a final judgment."  On September 22, Middleton filed
the present motion seeking an award of $722,095.80 in attorneys'
fees and costs.  For the following reasons, Middleton's motion
is granted in its entirety.

<u>**BACKGROUND**</u>

Over the past two years, Middleton, a resident of Iowa, has
struggled to collect a judgment owed to her by the defendant Tal
Etshtien ("Etshtien"), a resident of New York.  On July 29,
2014, the district court for the Southern District of Iowa
entered a default judgment for $1,859,200 against Etshtien and
his wholly-owned companies -- Green Cycle Housing, Inc. and
Green Cycle Housing, LLC.  Middleton registered the Iowa
judgment in this District on January 29, 2015, and immediately
began to pursue enforcement measures in New York.  These initial

enforcement efforts were led by the law firm of Collier, Halpern, Newberg & Nolletti, LLP ("CHNN").

On March 19, 2015, Middleton served upon Etshtien: (1) a subpoena ad testificandum; (2) a subpoena duces tecum with a restraining notice;[1] and (3) a notice to the judgment debtor pursuant to Rule 69, Fed. R. Civ. P. (collectively, the "March 19 subpoenae").  The March 19 subpoenae directed Etshtien to appear for a deposition at CHNN's offices on April 8, 2015 with the subpoenaed documents.  Etshtien never responded or objected to the subpoenae, nor did he appear for the scheduled deposition or produce the requested documents.

**I. Middleton's First Contempt Motion**

On May 28, 2015, Middleton filed a motion for an order pursuant to Rules 45 and 69, Fed. R. Civ. P., and Local Rule 83.6, holding Etshtien in civil contempt of court for failure without adequate excuse to obey the March 19 subpoena.  On May 29, 2015, the Honorable Alison J. Nathan, acting as Part I Judge, issued an order to show cause as to why Etshtien should not be held in contempt of court.  The return date for the order to show cause was June 30.

---

[1] The restraining notice provides that, pursuant to N.Y. C.P.L.R. § 5222(b), Etshtien is "forbidden to make or suffer any sale, assignment or transfer of, or any interference with any property in which [he has] an interest except as therein provided," and that "disobedience of this Restraining Notice is punishable as a contempt of court."

**A. Judge Ramos Issues an Order Holding Etshtien in Civil Contempt on July 8, 2015.**

Neither Etshtien nor his counsel appeared at the June 30 hearing.  Accordingly, on July 8, the Honorable Edgardo Ramos, acting as Part I Judge, issued an order holding Etshtien in civil contempt (the "July 8 Contempt Order").  The July 8 Contempt Order provided that Etshtien could purge his contempt by furnishing the requested documents, appearing for a deposition, and paying Middleton $5,850 in attorneys' fees.  The July 8 Contempt Order further provided that in the event Etshtien failed to comply with the March 19 subpoenae within fourteen days, Middleton could make an application for his arrest and Etshtien would be fined $100 for each outstanding day of non-compliance.

**B. Etshtien Does Not Comply with the July 8 Contempt Order and an Order to Show Cause Directing Etshtien's Arrest is Issued.**

Despite the terms of the July 8 Contempt Order, Etshtien did not comply with the March 19 subpoenae within fourteen days. Accordingly, on August 27, the Honorable Analisa Torres, acting as Part I Judge, issued an order to show cause, returnable September 4, directing Etshtien's arrest.

On September 3, with a warrant for his arrest looming, Etshtien filed an opposition to the order to show cause and a cross-motion to vacate the default judgment entered in the

Southern District of Iowa for lack of personal jurisdiction and
for failure of service.  He asserted that both he and Green
Cycle Housing lacked sufficient contacts with Iowa to justify
the exercise of personal jurisdiction by the Iowa district
court.  Etshtien also contested service as to himself but not as
to Green Cycle Housing.  Finally, he sought to quash the March
19 subpoenae on the ground that they were issued pursuant to a
void judgment.

   At a December 8, 2015 conference, this Court denied
Etshtien's cross-motion to vacate the judgment for lack of
personal jurisdiction and for failure of service.  The Court
found that the exercise of jurisdiction was proper in light of
Etshtien and his agent's purposeful and knowing contacts with
Iowa in connection with the unpaid loan at issue in the case.
Furthermore, after extensive questioning and probing from the
Court, Etshtien ultimately conceded that service was proper at
his New York City apartment.[2]  The Court's decision to uphold the

---

[2] Etshtien had initially maintained that his New York apartment
was not his "usual place of abode" for purposes of service, as
he spent significant time traveling outside the United States.
Later in the December 8 conference, however, when discussing
whether a bond was necessary to secure Etshtien's appearance at
a deposition, Etshtien's counsel represented to the Court that
Etshtien "is a U.S. citizen . . . [and] has every kind of
connection to this country, to this location" such that
requiring him to put up a bond would be unnecessary and
punitive.  In response, the Court remarked that "[F]or you to
argue to me now that [the Court] should know that [Etshtien] is
going to show up in New York because of his intimate contacts

validity of the Iowa judgment ultimately mooted Etshtien's motion to quash the March 19 subpoenae for being issued pursuant to a void judgment.

Despite conceding the issue of service, Etshtien maintained at the December 8 conference that he did not have actual notice of the March 19 subpoenae, the restraining order, and the order to show cause until late August 2015, when he physically returned to his New York apartment after months of travel. Etshtien continued to contest actual notice of the subpoenae and restraining order until July 2016.  In a Court-ordered affidavit dated July 5, 2016, Etshtien later admitted that he was in New York between March and August 2015.[3]

Finally, at the conclusion of the December 8, 2015, conference, Middleton requested that the Court order Etshtien to post a $100,000 bond in order to ensure his appearance at a

---

with this jurisdiction and that he is a U.S. citizen . . . suggests that that motion practice about personal service and his usual place of abode should not have been brought."  At a later June 21, 2016 conference, the Court reiterated its observation that this motion practice contesting service had been pursued "in bad faith."  Etshtien's testimony during the July 7, 2016 continuation of his deposition confirms that the motion practice concerning service had been pursued in bad faith.  At the deposition, Etshtien confirmed that he currently resides in his New York City apartment and that he does not have a permanent address in Indonesia.

[3] In the July 5, 2016 affidavit, Etshtien asserts that he spent most of the time between March and August 2015 in East Hampton but does not state that he never visited his apartment in New York City.

January 14, 2016 deposition.  In response to this request,

Etshtien's counsel -- Mr. Andrew P. Saulitis -- made the

following representation to the Court:

> I have no reason, whatsoever, to believe that Mr.
> Etshtien has the means to put up a bond in that amount
> or, for that matter, for any significant amount.
> Effectively, that kind of bond would be impossible to
> post . . . . It is just simply punitive to the point
> where he would not -- he wouldn't be able to do it, it
> is impossible for him to do it. . . . he doesn't have
> the means to do it.

Subsequently produced bank statements reveal that in fact,

between December 10 and December 18, 2015, Etshtien transferred

approximately $290,000 to himself, his family members, Mr.

Saulitis, and a law firm in Indonesia, all in violation of the

March 19 restraining order.

In an Order dated December 9, the Court required Etshtien

to produce, by December 18, all documents in response to the

March 19 subpoena, and to submit to a deposition on January 14,

2016.  While the Court granted Etshtien's application to travel

within and outside the United States in the interim, the

December 9 Order warned that a warrant for Etshtien's arrest

could be issued upon an ex parte application if Etshtien failed

to appear for his deposition.

**C. The January 14, 2016 Deposition Reveals Etshtien's Willful Non-Compliance with the March 19 Subpoenae and the Court's December 9 Order.**

As of December 18 -- the Court-ordered date for Etshtien's complete production -- Etshtien produced only four documents in response to the 41 categories of requests set forth in the March 19 subpoena.[4]  This scant production failed to include requested bank records or any other documents reflecting Etshtien's financial condition.  Accordingly, on December 30, Middleton's counsel sent Etshtien a letter requesting Etshtien's compliance with the March 19 subpoena and the Court's December 9 Order.  Etshtien, however, failed to produce any additional documents prior to his January 14, 2016 deposition.

At the deposition, Etshtien testified that he had possession, custody, and control of responsive documents (including several financial documents) that he had previously failed to produce notwithstanding the March 19 subpoena and December 9 Order.  Etshtien further revealed at the deposition that he had sole signing authority over at least three bank

---

[4] Etshtien's production consisted of: (1) a lease renewal dated May 4, 2015 (a copy of which had already been produced to the plaintiff); (2) a December 2015 Time Warner bill; (3) a December 2015 Verizon bill; and (4) a December 14, 2015 letter from Etshtien's CPA.

accounts[5] at First Republic Bank -- the ACI 1490 LLC account ("ACI 1490"), the Vitruvian Minerals LLC account ("Vitruvian"), and the 45 Upland Drive LLC account ("45 Upland Drive"); that he was the sole owner of the property located at 45 Upland Drive in Greenwich, Connecticut, from which he received approximately $15,000[6] per month in rent; that he controlled an account with an approximate balance of $50,000 at Indonesia's Bank Mandiri (the "Bank Mandiri account"), and that he received monthly $10,000 payments from PT-Suma Heksa Sinergi ("PT-SHS"), an Indonesian company, for serving as its President and Director.

Finally, Etshtien testified in Mr. Saulitis' presence that he had not seen a bill from Mr. Saulitis since 2006, that he did not have a written retainer for this action, and that he had not transferred any assets to Mr. Saulitis.  Later-produced bank documents reveal that in fact, Etshtien paid Mr. Saulitis $25,000 on December 14, 2015 in violation of the restraining notice.  Mr. Saulitis made no effort to correct his client's false statements during the deposition or anytime thereafter.

---

[5] Subsequently produced documents reveal that, in fact, Etshtien had sole signing authority over five bank accounts at First Republic Bank.

[6] The rent later increased to $15,700 per month.

**II. Middleton's Second Contempt Motion**

Following the January 14 deposition, counsel for Middleton sent Etshtien a letter requesting various tax and financial documents in connection with these newly disclosed property interests and bank accounts.  The defendant failed to comply with Middleton's production request.  Accordingly, on January 27, Middleton filed a second order to show cause seeking to hold Etshtien in civil contempt.

Conferences were held on January 27 and January 28 to address Middleton's application.[7]  At the January 27 conference, the Court ordered Etshtien to make a complete production of the requested documents by January 28, warning that his failure to do so would result in the Court imposing a travel ban.

At a January 28 conference, Mr. Saulitis tendered a flash drive to counsel for Middleton with responsive documents and agreed to provide easily retrievable tax and financial documents per the plaintiff's request.  Upon reviewing the documents contained in Mr. Saulitis' flash drive, counsel for Middleton filed a letter on February 22 identifying a number of deficiencies with the defendant's production.  These

---

[7] Following the December 8 conference, which came before this Court as a Part I matter, the action was reassigned to this Court's docket.

deficiencies were largely cured in advance of a February 29
telephone conference with the Court.

On March 7, Etshtien filed a declaration, in which he
attested that he had conducted a "diligent search of all
records," and that to his knowledge, all existing responsive
records had been produced.  Accordingly, on March 10, the Court
denied without prejudice the plaintiff's January 27 application
to hold Etshtien in civil contempt.

Between April and June 2016, Middleton's counsel secured
restraints, writs of execution, and charging orders against
Etshtien's assets in an effort to prevent any further unlawful
transfers and curtail Etshtien's obstructionism.  In April 2016,
Middleton served twenty-four restraining notices against
Etshtien's wholly-owned companies and other companies in which
he possessed a property interest.  That same month, Middleton
sought and obtained an ex parte charging order in the District
of Connecticut against Etshtien's property interests in five
Connecticut limited liability companies.  The plaintiff also
registered the judgment in the District of Delaware and, in May
2016, sought and obtained a charging order against Etshtien's
interests in four Delaware limited liability companies.  In June
2016, Middleton sought seventeen writs of execution in New York
and four in Connecticut.

### III. Middleton's Third Contempt Motion

On June 16, Middleton filed a petition for a turnover order pursuant to Rule 69, Fed. R. Civ. P., and N.Y. C.P.L.R. §§ 5225 and 5227 (the "June 16 Petition").  The June 16 Petition sought an order directing ACI 1490, Vitruvian, and 45 Upland Drive to turn over all property in which Etshtien held an interest.  The June 16 petition alleged that between March 19, 2015 and March 31, 2016, Etshtien had either personally used or transferred $600,000 from his ACI 1490 and 45 Upland Drive accounts.  The June 16 Petition further alleged that Etshtien had withdrawn more than $300,000 in cash from the Vitruvian account, and had used the account to pay for personal expenses such as rent, cable, utility, grocery, and cell phone bills.  In response to the June 16 Petition, the Court immediately issued an order prohibiting Etshtien or any of his agents from removing funds from the First Republic bank accounts held by ACI 1490, Vitruvian, and 45 Upland Drive.

The following day, Middleton filed a motion for a turnover order, contempt, and related relief (the "June 17 Contempt Motion").  In addition to renewing the request for a turnover order, the June 17 Contempt Motion sought an order pursuant to N.Y. C.P.L.R. § 5222(b)[8] holding Etshtien in contempt for

---

[8] N.Y. C.P.L.R. § 5222(b) provides in relevant part: "A judgment debtor or obligor served with a restraining notice is forbidden

violating the restraining notice.  The motion elaborated upon the instances of contempt alluded to in the June 16 Petition, outlining in detail how Etshtien transferred $954,574.66 in violation of the March 19 restraining notice.

The June 17 Turnover Motion also sought an order pursuant to N.Y. C.P.L.R. § 5251[9] holding Etshtien in contempt for false swearing at his January 2016 deposition.  As the motion explained, in sifting through Etshtien's belated production, Middleton's counsel uncovered four instances of false swearing. First, Etshtien falsely swore that neither he nor his entities paid Mr. Saulitis any money, when in fact he paid Mr. Saulitis $25,000 in December 2015.  Second, Etshtien falsely testified about the number of accounts he maintained at First Republic Bank.  Subpoenaed records from First Republic Bank revealed that Etshtien was a signatory on five -- not three -- accounts at First Republic Bank.  Third, Etshtien falsely testified that he had neither a direct nor indirect interest in Vitruvian Minerals

---

to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest . . . except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated." Disobedience of a restraining notice is punishable as a contempt of court.  See N.Y. C.P.L.R. §§ 5222(a) and 5251.

[9] N.Y. C.P.L.R. § 5251 provides in relevant part: "Refusal or willful neglect of any person to obey a subpoena or restraining notice issued, or order granted, pursuant to this title; false swearing upon an examination or in answering written questions . . . shall each be punishable as a contempt of court."

LLC ("Vitruvian").  In fact, however, Vitruvian's operating
agreement revealed that Etshtien's wholly-owned ACI 1490 LLC
had, at the time of the deposition, been a member of Vitruvian,
and that Etshtien had since transferred his membership interest
to an offshore company called Volyn Global Resources Partners
("Volyn") in order to conceal his interest.  Finally, Etshtien
denied having transferred any of his assets within the past two
years at his deposition.  But Etshtien's bank records revealed
that he had transferred over $900,000 within that time,
including $392,851 to family members and his attorneys.

A conference was held on June 21 to address the June 16 and
17 motions.[10]  At the conference, the Court observed that
Etshtien had "taken action to hide assets, place them beyond the
reach of this Court and the judgment that he owes," and that he
had been "deceptive" such that the Court could not "place the
trust in him that [it] placed in December."  The Court later
expressed its concern that Etshtien would continue to evade his
obligations to Middleton and to the Court; that he would "move
money to make it as inaccessible as possible and to place it out
of reach."

---

[10] On June 20, 2016, the law firm of Greenberg Traurig, LLP
substituted CHNN as sole counsel for Middleton.

Accordingly, in an Order dated June 21 (the "June 21 Order"), the Court imposed a temporary travel ban on Etshtien and ordered him to pay, by June 29: (1) the $5,850 in legal fees owed to Middleton's counsel per Judge Ramos' July 8 Contempt Order; (2) $19,800 to the Clerk of Court,[11] also per the July 8 Contempt Order; and (3) $10,000 to Middleton's counsel, to be held in escrow for Middleton.  The June 21 Order warned that if Etshtien failed to make the required June 29 payments, he could face incarceration.

At a June 30 conference, the Court learned that Etshtien had only partially complied with the June 21 Order.  While Etshtien furnished the $10,000 to Middleton's counsel, he did not pay the $19,800 fine to the Clerk of Court and only paid $1,854.52 of the $5,850 in legal fees.  Etshtien's noncompliance with the restraining notice, his blatant disregard of the Court's orders, and his overall lack of candor prompted the Court to state the following:

> I have motions to hold Mr. Etshtien in contempt for violations of the restraining order for failure to pay the July 8 order -- and he still hasn't satisfied that July 8 order -- for false statements made.  As these proceedings continue, I think we can probably add to the list of false statements. . . . Mr. Etshtien and his attorney have not acted as truth-tellers.  They

---

[11] Pursuant to the July 8 Order, Etshtien was required to pay $100 for each day he failed to comply with the March 19 subpoenae.  Etshtien did not substantially comply with Middleton's document requests until January 28, 2016 -- 198 days after the July 8 Order was issued.

15

have not taken their responsibilities . . . to the
Court under the law seriously.  Statements made in Mr.
Etshtien's most recent submissions to me are at odds
with statements in declarations previously submitted.
Statements he made under oath in his deposition are at
odds with the facts as we've come to know them.
Monies have been disbursed in violation of a
restraining order.  I have every reason to believe
that monies are being hidden from the Court right now.
An order to pay money by yesterday was only partially
complied with . . . .  I'm going to give everyone an
opportunity to prove their good faith.  If they
squander that opportunity, so be it.  Mr. Etshtien and
Mr. Saulitis have squandered that opportunity.

On July 1, the Court issued an order (the "July 1 Order")
requiring, amongst other things, Mr. Saulitis to return the
$25,000 he received in December 2015 to Middleton's counsel --
to be held in escrow for Middleton.  Only after Mr. Saulitis
executed this payment would Etshtien be permitted to travel
outside the country for work, the July 1 Order explained.  The
July 1 Order also gave the parties leave to negotiate a payment
installation schedule.

Mr. Saulitis' payment was made on July 1.  On July 13, the
parties reached an interim agreement whereby Etshtien agreed to
pay $8,500 per month toward Middleton's judgment.  Pursuant to
this agreement, the Court issued an order permitting Etshtien to
travel.

16

**IV. The Court Issues a Second Contempt Order Against Etshtien on September 9, 2016.**

On August 5, 2016, Middleton filed a status report regarding unresolved requests for relief from her June 16 and 17 motions.  In the August 5 report, Middleton requested, amongst other things: (1) the turnover of funds from Etshtien's account at Bank Mandiri and the ACI 1490 and 45 Upland Drive accounts at First Republic Bank;[12] and (2) an order confirming that Etshtien remains in contempt of Court for violating the restraining notice, for failing to purge his contempt as set forth in Judge Ramos' July 8 Contempt Order, and for false swearing at his January 14, 2016 deposition.  A conference was held on August 30 to address Middleton's submission.

At the August 30 conference, the Court confirmed that Etshtien had, since entry of the July 8, 2015 Contempt Order, "been in contempt repeatedly."  As the Court explained:

> [Etshtien] was served with the [the restraining order], was aware of it, knowingly violated it on many occasions, never came to the Court when he could have with great ease to ask for relief from the restraining order.  Instead, he just hid assets, lied to the Court, made misrepresentations about his finances, and wiped accounts entirely or substantially clean so that the assets were beyond recovery of the plaintiff.

---

[12] As detailed in the August 5 status report, as late as June 3, 2016, Etshtien transferred $7,000 from the Vitruvian account into his ACI 1490 account, then to his 45 Upland Drive account, and ultimately to an attorney in Connecticut defending a foreclosure action against the 45 Upland Drive property.

17

The Court also highlighted the willfulness of Etshtien's
contemptuous conduct:

> [M]any of these transfers were made during the period
> of time when there is no dispute that Mr. Etshtien was
> aware of the restraining order. . . . There is a clear
> violation of the restraining order, intentional
> willful violations of court orders.  These transfers
> are part of the basis for me finding that he has been
> in contempt of this Court's orders.

Accordingly, in a September 9, 2016 Judgment and Order
("September 9 Judgment"), the Court held Etshtien in contempt of
Court pursuant to (1) N.Y. C.P.L.R. §§ 5222 and 5251, for
violating the terms of the restraining notice by unlawfully
transferring money or other property in which he has an
interest; and (2) N.Y. C.P.L.R. § 5251, for false swearing.  The
September 9 Judgment simultaneously eliminated as bases for
contempt Etshtien's failure to pay the $5,850 attorneys' fees
award and the $19,800 fine from Judge Ramos' July 8 Contempt
Order.  Finally, the September 9 Judgment granted the
plaintiff's application for the right to an award of attorneys'
fees and expenses pursuant to N.Y. C.P.L.R. § 5251, with the
amount and reasonableness of the fees to be determined.

The plaintiff filed the present motion to fix attorneys'
fees and costs on September 22, 2016.  The motion became fully
submitted on November 11, 2016.  The motion seeks $722,095.80 in
attorney's fees incurred as a result of Etshtien's contempt.

The motion also seeks payment of the outstanding $3,995.48[13] in attorneys' fees from Judge Ramos' July 8 Contempt Order.  For the reasons set forth below, Middleton's application is granted in its entirety.

## DISCUSSION

### I. Civil Contempt Sanctions

Under New York law, a judgment creditor may issue a restraining notice to be served on a judgment debtor pursuant to N.Y. C.P.L.R. § 5222(a).  Once the debtor has been served with a restraining notice, the debtor cannot "make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated."  N.Y. C.P.L.R. § 5222(b). "[R]efusal or willful neglect to obey a restraining notice is punishable as contempt," as is "false swearing upon an examination or in answering written questions."  N.Y. C.P.L.R. § 5251.

On September 9, 2016, the Court entered an order pursuant to N.Y. C.P.L.R. §§ 5222 and 5251 holding Etshtien in contempt

---

[13] At the June 30, 2016 conference, Middleton's counsel informed the Court that Etshtien had paid only $1,854.52 of the $5,850 in attorneys' fees pursuant to Judge Ramos' July 8 Contempt Order and this Court's June 21 Order.  The plaintiff's motion states that $3,945.48 remains unpaid.  This appears to be a typo, as the Court calculates that $3,995.48 remains outstanding.

for violating the terms of the restraining notice and for false swearing.  The Court simultaneously granted Middleton's application for an award of attorneys' fees and expenses. Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996) (noting that district courts "may award appropriate attorney fees and costs to a victim of contempt").

"When deciding whether to award fees, courts have focused on the willfulness of the contemnor's misconduct." Id.  In fact, where the contemnor has demonstrated willful misconduct, a court "would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt" in order to survive appellate review.  Id.

"[T]rial courts enjoy considerable discretion in determining the appropriate amount of attorney fees." Id. at 720.  Some factors that courts may take into consideration when determining the reasonableness of a fee award include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  Id. at 437.  Such documentation must include "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."  Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 148 (2d Cir. 2014) (citation omitted).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  Hensley, 461 U.S. at 433.

"Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded" from the tally.  Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (citation omitted).  If it finds excessive hours, a court has "discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  Id. (citation omitted).  Similarly, records or other documentation that are too vague to sufficiently document the hours claimed may also warrant a reduction in hours eligible for compensation.  Id.  This may include the practice of "block billing," although block billing may be adequate if "the reasonableness of the work performed can still be confirmed."  U.S., ex rel. Fox Rx, Inc. v. Omnicare, Inc., 12cv275 (DLC), 2015 WL 1726474, at *3 (S.D.N.Y. Apr. 15, 2015) (citation omitted).

## II. Calculating Middleton's Attorneys' Fees Award

Middleton seeks $722,095.80 in attorneys' fees and costs. For the reasons set forth below, the Court finds this amount to be reasonable given the magnitude and frequency of Etshtien's contemptuous conduct in this case.

### A. The Number of Hours Expended by Middleton's Attorneys on Prosecuting the Contempt Motions was Reasonable Under the Circumstances.

Etshtien argues that Middleton's recovery should be restricted to the hours spent drafting the contempt motions. As Etshtien explains, while Middleton may be entitled to seek attorneys' fees and disbursements "in bringing her contempt motions," she is "not entitled to fees and disbursements for the multiple other procedures and proceedings she has undertaken in seeking discovery of assets and enforcement of the judgment." Etshtien's argument is unavailing because it overlooks the compensatory goal of contempt sanctions and underestimates the effort required to uncover Etshtien's contemptuous conduct and ultimately secure his compliance with the March 19 subpoenae and the Court's orders.

Civil contempt sanctions may serve dual purposes, namely "to secure future compliance with court orders and to compensate the party that has been wronged." Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 657 (2d Cir. 2004). "The compensatory goal . . . can only

be met by awarding to the plaintiff any proven damages."
Weitzman, 98 F.3d at 719.  Such "proven damages" are not limited
to the fees incurred in drafting a contempt motion.  Imposing
such a limitation would undercompensate Middleton for her
extensive efforts to uncover and overcome Etshtien's flagrant
and contumacious defiance of the restraining notice and
subsequent court orders.

Etshtien also argues that much of what Middleton
accomplished in this matter was achieved by consent, thereby
suggesting that a significant portion of Middleton's legal
expenses were avoidable.  But the record in this case belies
Etshtien's characterization.  For example, Etshtien claims that
Mr. Saulitis "voluntarily" paid $25,000 to counsel for Middleton
on July 1, 2016.  Etshtien omits the fact that the $25,000 was
originally paid to Mr. Saulitis in violation of the restraining
notice, and that this unlawful transfer was detected only after
Middleton filed a second contempt motion to secure Etshtien's
compliance with the March 19 subpoena.  Etshtien also ignores
the Court's intervention in this matter; specifically, the July
1, 2016 Order banning Etshtien from traveling abroad unless Mr.
Saulitis transferred the $25,000 to Middleton.

Etshtien further contends that the work performed to obtain
turnover orders should not be compensated because Etshtien
"voluntarily" agreed to a stipulated turnover order of any

23

distributions from Vitruvian, Vitruvian Resources, LLC, or
Volyn.  But again, Etshtien's account overlooks the months of
obstructionism that preceded his compliance.  For example,
Etshtien omits how he failed in the first instance to produce
documents in accordance with the March 19 subpoena that would
have revealed his interests in these companies.  Etshtien also
omits how he lied at the January 2016 deposition about his
interests in Vitruvian and Volyn, and how he later transferred
his membership interest from ACI 1490 LLC to Volyn in an effort
to conceal this interest.  Finally, Etshtien omits that he only
produced documents revealing his interest in Volyn upon threat
of arrest, and further, that he only "agreed" to the stipulated
turnover after Middleton filed the turnover petition and motion
for contempt with the Court.

In sum, as detailed above, Etshtien's brazen disregard of
the March 19 subpoena, the restraining notice, and several court
orders converted what could otherwise have been a
straightforward collection case into a marathon.  Etshtien
unlawfully transferred funds to his family members and attorneys
in violation of the restraining notice; he moved assets offshore
and funneled money through numerous bank accounts to avoid
collection; and he was not forthcoming during his deposition or
in his representations to the Court.  As a result, Middleton was
forced to engage in costly motion practice, discovery, asset

tracing and analysis, preparation and service of restraining orders and information subpoenas on third parties, and other judgment enforcement measures to protect her rights as a judgment creditor.  In sum, the costs incurred by Middleton's counsel were necessitated by Etshtien's persistent attempts to hinder and obstruct Middleton's enforcement efforts.

**B. Etshtien's Contemptuous Behavior Further Exacerbated the Already Complex Nature of this Enforcement Proceeding.**

Etshtien's use of numerous business structures to avoid detection and his unlawful transfer of assets to evade court orders raised complex issues of fact, which, in turn necessitated costly research and enforcement measures.  For example, Middleton's attorneys were required to research enforcement methods available in foreign jurisdictions, and other questions of federal and procedural law applicable in each such jurisdiction.  Moreover, Etshtien's bad faith challenge to the Iowa judgment and his frivolous argument regarding actual notice of the March 19 subpoenae and the restraining order imposed additional costs on Middleton, including multiple service of process efforts and frivolous motion practice.

**C.  Middleton's Attorneys Possess the Requisite Experience to Prosecute this Case and Charge Reasonable Billing Rates.**

Etshtien's attorneys possess decades of experience in the complex field of judgment enforcement, and it is due to their persistence and diligence that Middleton has obtained a

25

favorable result -- namely, periodic payments toward satisfaction of her judgment, as well as monthly disclosures from Vitruvian regarding Etshtien's income.  Middleton's attorneys' billing rates are also in line with prevailing rates in New York and Iowa for similar services by lawyers of reasonably comparable skill, expertise, and reputation.

Etshtien argues that Middleton's attorneys' reliance on vague descriptions and block-billed time entries demonstrates the unreasonableness of the hours requested.  The use of "block billing" here is perfectly reasonable; the specific tasks in each "block" are described with sufficient detail and clarity to confirm "the reasonableness of the work performed."  <u>Omnicare</u>, 2015 WL 1726474, at *3.

Etshtien also characterizes Middleton's request as "grossly excessive," "punitive," and "disproportionate."  Accordingly, Etshtien seeks, without sufficient justification, a blanket 90% discount.  For the reasons outlined above, the Court finds that the number of hours expended by Middleton's attorneys on this case was reasonable in light of Etshtien's evasive and contumacious conduct, and that a blanket discount is not justified under this circumstances.

## CONCLUSION

Middleton is awarded $722,095.80 in attorneys' fees and costs.  Middleton is also awarded the $3,995.48 in attorneys' fees outstanding from the July 8, 2015 Contempt Order entered by the Honorable Edgardo Ramos.

Dated:    New York, New York
          February 22, 2017

_____
DENISE COTE
United States District Judge